Matthew Z. Crotty, WSBA 39284
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave. Suite 404
Spokane, WA 99201
Telephone: (509)850-7011
Email: matt@crottyandson.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEBORAH BELEW-NYQUIST,   )
                         )   NO. _____
       Plaintiff,        )
                         )
                         )   COMPLAINT
   vs.                   )
                         )   JURY TRIAL DEMANDED
QUNICY SCHOOL DISTRICT,  )
                         )
       Defendant.        )
                         )
                         )
_____)

## I. PARTIES, JURISDICTION, & VENUE

1. Plaintiff Dr. Deborah Belew-Nyquist is a resident of the State of Washington.

2. Defendant Quincy School District ("QSD") is a municipal corporation that is located in the Eastern District of Washington.

COMPLAINT: 1

3. This action also arises under the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination (WLAD).

4. On or about December 4, 2018, Dr. Belew-Nyquist filed a charge of retaliation with the Equal Employment Opportunity Commission. On or about March 27, 2019, the EEOC issued Dr. Belew-Nyquist a right to sue letter. Since Dr. Belew-Nyquist has commenced this action within 90 days of receiving the March 27, 2019, right to sue letter she has satisfied the administrative prerequisites necessary to prosecute her Title VII retaliation claim.

5. On or about April 19, 2019, Dr. Belew-Nyquist caused her RCW 4.96.020 Notice of Tort Claim to be served on QSD's agent. Sixty days have elapsed since April 19, 2019. Accordingly, Dr. Belew-Nyquist has satisfied the administrative prerequisites necessary to prosecute her WLAD claim.

6. Venue is appropriate under 28 U.S.C. §1391(b) because the events giving rise to this Complaint occurred in this District.

## II. FACTS

7. Dr. Belew-Nyquist worked for the District from July 1, 2017 through June 30, 2018. Dr. Belew-Nyquist worked as the QHS principal.

COMPLAINT: 2

8. On or about February 8, 2018 Dr. Belew-Nyquist informed District management, including its Superintendent, John Boyd, and Assistant-Superintendent, Nik Bergman, that she planned on leaving the District's employment at the end of the 2017 – 2018 school year. She requested letters of recommendation from both Mr. Boyd and Mr. Bergman. Mr. Bergman wrote a letter on Claimant's behalf. Mr. Boyd agreed to write a reference letter but waited until June 1, 2018, to do so.

9. In the Spring of 2018, QSD Board member Alex Ybarra came to Dr. Belew-Nyquist's office to meet with her and stated that he wanted a relative of his to receive special recognition at the QHS graduation.

10. Mr. Ybarra stated that, in his opinion, it "would be outstanding to have [the relative] specially recognized as a role model for the large Quincy population who are Hispanic because [the relative] is Hispanic."

11. Dr. Belew-Nyquist told Mr. Ybarra that she could not honor that request because Mr. Ybarra's relative who was in the Running Start program, would not have received an Associate Degree until after the graduation date which, in turn, would make the recognition premature and possibly inaccurate in the event the relative did not actually obtain an Associate Degree.

COMPLAINT: 3

Case 2:19-cv-00215    ECF No. 1    filed 06/21/19    PageID.4    Page 4 of 13

12. Additionally, Dr. Belew-Nyquist stated that students who were being recognized had been selected in accordance with the QSD Board Policy and QHS criteria; she stated she would be very concerned about all of the additional students who had similar achievements but who did not meet Mr. Ybarra's race based criteria for special recognition during graduation.

13. Mr. Ybarra angrily told Dr. Belew-Nyquist if she refused to comply he would take the issue to the QSD's school board and to the Washington State Board of Education to make this happen.

14. Angered by Dr. Belew-Nyquist's refusal to specially recognize his relative at the QHS graduation on account of that relative's race, Mr. Ybarra escalated his request to Mr. Boyd who, in turn, texted Dr. Belew-Nyquist:

COMPLAINT: 4



15. Thereafter Mr. Boyd repeatedly contacted Dr. Belew-Nyquist and demanded she "give [him] something to get Alex off of [his] back" and that he "needed something to placate Alex" because Mr. Boyd and Mr. Ybarra were driving (together) to a meeting in Yakima during this timeframe and Mr. Boyd made clear to Dr. Belew-Nyquist that he (Boyd) did not want to be placed in an awkward or uncomfortable position of not being able to satisfy Mr. Ybarra, a board member.

16. Mr. Boyd asked Dr. Belew-Nyquist again if Mr. Ybarra's relative could be recognized at the QHS graduation notwithstanding the fact that the relative would

COMPLAINT: 5

not have graduated at that time and was not selected for recognition determined by school guidelines for special recognition of students at graduation.

17. Dr. Belew-Nyquist refused to back down and, instead, told Mr. Boyd she could not honor Mr. Ybarra's request because it was race discrimination, here Mr. Ybarra's demand that his relative receive favorable treatment on account of race.

18. Dr. Belew-Nyquist's refusal to sanction a race-based decision is protected activity under federal and state law for which an employer's retaliation is prohibited. *See e.g.* RCW 49.60.210; 42 U.S.C. §2000e-3(a). That Dr. Belew-Nyquist is no longer a QSD employee does not deprive her of standing to assert state or federal retaliation claims against QSD. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).

19. On June 11, 2018, Dr. Belew-Nyquist submitted her resignation. Dr. Belew-Nyquist submitted her resignation based, in part, on Mr. Bergman's and Mr. Boyd's promise that they would give Dr. Belew-Nyquist an outstanding performance review, which both indicated they would do in several previous conversations, the first of which took place in late January 2018 telephone call.

20. Shortly thereafter someone from QSD told the Quincy Valley Post-Register ("QVPR") words to the effect of "Dr. Belew-Nyquist suddenly resigned without any warning."

COMPLAINT: 6

21. On July 1, 2018, the QVPR published a newspaper article entitled "High School Principal Resigns" and began the first sentence of that article as follows: "In a stunning decision, Dr. Debbie Belew-Nyquist resigned as principal of Quincy High School after one year on the job."

22. Dr. Belew-Nyquist's decision was not "stunning", District management (i.e. Boyd, Bergman, and Carole Carlton – QHS Director of Learning) was aware of Dr. Belew-Nyquist's intent to resign months earlier.

23. On July 6, 2018, the QVPR published a second article regarding Dr. Belew-Nyquist. This article quotes Mr. Boyd as follows: "Asked why she had resigned, Boyd said he did not know and she had given no reasons."

24. Mr. Boyd's statement to the QVPR was untrue because Dr. Belew-Nyquist told Mr. Boyd, beginning in January 2018 and in subsequent meetings thereafter, that she was looking for work elsewhere and the reasons why.

25. Following her resignation, Mr. Bergman and Mr. Boyd broke their promise and refused to give Dr. Belew-Nyquist an outstanding performance review.

26. Following her resignation, Mr. Boyd has refused to field questions from Dr. Belew-Nyquist's prospective employers.

27. Mr. Boyd's refusal to respond is tantamount to providing a poor job reference insofar as the non-response implies, to a prospective employer, that the

COMPLAINT: 7

applicant either did something wrong or was such a marginal performer that the supervisor does not even care to take a few minutes to field a brief phone call on that applicant's behalf.

28. Mr. Boyd's refusal to respond to reference checks from prospective employers has materially and adversely affected Dr. Belew-Nyquist's ability to find work.

29. And it was only *after* QSD received Dr. Belew-Nyquist's Notice of Tort Claim (which accused Mr. Boyd of not responding to reference requests in retaliation for Dr. Belew-Nyquist's oppositional activity) that Mr. Boyd actually returned an inquiry of a potential employer of Dr. Belew-Nyquist.

30. Mr. Boyd's return email to the prospective employer was in a terse tone and consisted of words to the effect of "I cannot and will not talk about Dr. Belew-Nyquist unless she gives me her express consent."

31. Dr. Belew-Nyquist had already expressly consented to Mr. Boyd discussing her workplace performance while at QSD.

32. On June 21, 2018, Elizabeth Henley, an employee of a professional search firm, contacted Mr. Bergman in order to perform a reference check on Dr. Belew-Nyquist.

COMPLAINT: 8

33. Ms. Henley had originally tried to contact Mr. Boyd, but did not receive a call back from Mr. Boyd even though Ms. Henley left messages with Mr. Boyd on June 12, 2018, June 13, 2018, June 14, 2018, and June 15, 2018.

34. During that June 21, 2018, in a call from Ms. Henley, Mr. Bergman said that "Due to the way she left and resigned her position, we would not hire her again." To wit:

> 6-21-18 Called according to our process. Reached Nik Bergman. He did confirm dates of employment and position held. He offered "Debbie resigned her position if she had not resigned we would have kept her on as Principal. Due to the way she left and resigned her position, we would not hire her again. She really did a great job and brought a lot of professionalism to the school. Before Debbie arrived the staff struggled to conduct a professional meeting and she gave the staff a lot of self-worth brought a lot of pride and energy to the school". Nik declined further comment. The tone of voice professional and polite. (Liz)
>
> 6-20-18 Called Nik Bergman at 509.385.9530. Reached voicemail. Did leave a message. (Liz)
>
> 6/19/18 Per client request, discontinue efforts to reach John Boyd and instead call Nik Bergman, Asst. Superintendent over Human Resources at 509.385.9530 (cell). Called Nik Bergman at 509.385.9530. Reached voicemail. Did leave a message. (Jeff)
>
> 6-15-18 Called alternate number according to our process. Reached voicemail for John Boyd. Did leave a message. Sent email request. (Liz)
>
> 6-14-18 Called according to our process. Reached a general voicemail and left a message. Called alternative number, reached John's voicemail but it was full. Could not leave a message. (Aisling)
>
> 6-13-18 Called alternate number according to our process. Reached voicemail for John Boyd. Did leave a message. (Liz)
>
> 6-12-18 Called according to our process. Reached the receptionist who said John Boyd, not in the office and transferred the call to his voicemail Did leave a message. (Liz)

35. The statement that QSD would not re-hire Dr. Belew-Nyquist was inconsistent with the glowing letter of reference that Mr. Bergman authored for Dr. Belew-Nyquist on March 11, 2018 in which Mr. Bergman claimed to give his "highest recommendation" for Dr. Belew-Nyquist. To wit:

> Without reservation, I give Dr. Deborah Belew-Nyquist my highest recommendation as a prospective Director of Kilby Laboratory School. Given the opportunity, she will be a significant contributor and a highly effective educational leader. Please do not hesitate to contact me if I can be of any further assistance at 509-385-9530.
>
> Best Regards,
>
> Nikolas Bergman
> Quincy School District, Assistant Superintendent

36. But more to the point, Mr. Bergman's comment, "due to the way she left" is incredibly damaging because it makes the reference checker wonder what he means and what Dr. Belew-Nyquist "did." The only thing Dr. Belew-Nyquist "did" was resign (after informing QSD of her intent to do so months earlier) and do so after exercising her right to oppose race discrimination.

37. Taken together, or separately, QSD's misleading statements to the press, statements that QSD would not re-hire Dr. Belew-Nyquist, failure to respond to calls from Dr. Belew-Nyquist's prospective employers, and failure to provide the previously promised high performance evaluation have materially adversely affected her ability to find work.

38. Unquestionably, QSD's actions are in retaliation for her having opposed Mr. Ybarra's race discrimination.

COMPLAINT: 10

39. Since departing QSD Dr. Belew-Nyquist has applied for more than 40 jobs and has received zero offers of employment except for one job in Latin America that is not set to begin until July 2020.

### III. LEGAL CLAIMS

**(Violation of the Title VII of the Civil Rights Act – Retaliation.)**

40. A Title VII retaliation claim requires proof that the plaintiff (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two.

41. Dr. Belew-Nyquist engaged in protected activity by opposing Mr. Ybarra's ploy to favorably recognize Mr. Ybarra's relative at graduation on account of that relative's race. Dr. Belew-Nyquist also engaged in protected activity by opposing Mr. Boyd's request to "get Ybarra off of his back" by allowing the race favoritism to proceed.

42. Dr. Belew-Nyquist was subjected to the material adverse employment actions of (a) QSD's misleading statements to the press, (b) statements that QSD would not re-hire Dr. Belew-Nyquist, (c) QSD's failure to respond to calls from Dr. Belew-Nyquist's prospective employers, and (d) QSD's failure to provide the previously promised high performance evaluation. As those actions, taken together or individually, would dissuade a reasonable worker from opposing workplace

COMPLAINT: 11

discrimination due to the fact those actions/inactions by QSD have had on Dr. Belew-Nyquist's career.

43.    The causal link between the oppositional activity and materially adverse employment actions is shown by (a) the closeness in time between the oppositional activity (April 2018) and non-responses (beginning in June 2018) to queries by potential employers of Dr. Belew-Nyquist, (b) the inconsistent statements that QSD has made regarding Dr. Belew-Nyquist, i.e. that Mr. Bergman gave her a glowing written recommendation letter but told at least one person that QSD would not re-hire Dr. Belew-Nyquist, (c) the vague and subjective reasoning ("the way she left") for QSD's no-rehire decision, and (d) the false statements to the local media that Dr. Belew-Nyquist suddenly resigned when QSD's leadership was well aware that Dr. Belew-Nyquist informed QSD of her reasons and decision to resign months earlier.

44.    QSD's actions and omissions have caused Dr. Belew-Nyquist damages in an amount to be proven at trial.

**(Violation of the Washington Law Against Discrimination – Retaliation.)**

45.    Under the WLAD, RCW 40.60.210, an employer cannot discriminate against a former, current, or prospective employee on account of that former, current, or prospective employee's opposition to race discrimination.

COMPLAINT: 12

46. The QSD violated RCW 49.60.210 for the reasons set out above.

47. The QSD's acts have caused Dr. Belew-Nyquist damage in an amount to be proven at trial.

## IV. PRAYER FOR RELIEF

Plaintiff respectfully prays that this Honorable Court enter an Order providing Dr. Belew-Nyquist all remedies available to her by law, including, but not limited, to an award of:

A. General and economic damages as allowed under Title VII;

B. Costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and,

C. Such other and further relief as the Court deems just or equitable.

DATED this 21st day of June, 2019.

CROTTY & SON LAW FIRM, PLLC

By /s/ Matthew Z. Crotty
Matthew Z. Crotty, WSBA 39284
905 W. Riverside Ave. Ste. 404
Spokane, WA  99201
Telephone:  (509)850-7011
Email: matt@crottyandson.com

*Attorneys for plaintiff*

COMPLAINT: 13