UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEBORAH BELEW-NYQUIST,<br><br>                Plaintiff,<br><br>v.<br><br>QUINCY SCHOOL DISTRICT<br>No. 144,<br><br>                Defendant. | NO: 2:19-CV-0215-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant Quincy School District No. 144's Motion for Summary Judgment (ECF No. 13). The Motion was submitted without a request for oral argument. The Court has reviewed the file and completed briefing and is fully informed. For the reasons discussed below, the Motion is **denied**.

## BACKGROUND

This case concerns alleged retaliation by Defendant Quincy School District ("QSD") against Plaintiff Dr. Belew-Nyquist for opposing what she perceived as

an illegal request to extend an honor for a graduation ceremony based on race. As discussed more below, Plaintiff asserts employees of the District retaliated by failing to respond to prospective employer inquiries and otherwise responding with a partially negative assessment of Plaintiff.

Plaintiff began working as a principle at Quincy High School ("QHS") on July 1, 2017. ECF No. 1 at 2, ¶ 7. However, sometime around early 2018, Plaintiff informed QSD "management, including its Superintendent, John Boyd, and Assistant-Superintendent, Nik Bergman, that she planned on leaving the District's employment at the end of the 2017-2018 school year." ECF Nos. 1 at 3, ¶ 8, at 7, ¶ 24 (Plaintiff stating she told Boyd in January 2018). It is not clear why Plaintiff had decided to end her employment, although she claims she told Boyd "she was looking for work elsewhere and the reasons why" in January 2018. ECF No. 1 at 7, ¶ 24.

Sometime in the early April of 2018, QSD Board member Alex Ybarra told Plaintiff that "he wanted a relative of his to receive special recognition at the QHS graduation . . . as a role model for the large Quincy population who are Hispanic because the relative is Hispanic" and because she was graduating QHS with an associate degree. ECF Nos. 1 at 3, ¶¶ 9-10 (brackets omitted); 15-2 at 5-6, 13. Plaintiff told Mr. Ybarra that his relative would not have earned the degree by the time of graduation and that "she would be very concerned about all of the

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 2

additional students who had similar achievements but who did not meet Mr. Ybarra's race based criteria for special recognition during graduation." ECF Nos. 1 at 4, ¶ 12; 15-2 at 5-6.

According to Plaintiff, she notified Mr. Boyd that she refused Mr. Ybarra's request. ECF No. 15-2 at 6. Mr. Boyd thereafter texted Plaintiff: "Could you please find out how many seniors have earned their AAs and what their racial makeup is?" ECF No. 1 at 5, ¶ 14. According to Plaintiff, "Mr. Boyd repeatedly contacted [Plaintiff] and demanded she 'give him something to get [Mr. Ybarra] off of his back' and that he needed something to placate'" Mr. Ybarra. ECF Nos. 1 at 5, ¶ 15 (brackets own; original brackets omitted); 15-2 at 11. Plaintiff "refused to back down and, instead, told Mr. Boyd she could not honor Mr. Ybarra's request because it was race discrimination . . . ." ECF No. 1 at 6, ¶ 17.

Plaintiff resigned on June 11, 2018. ECF Nos. 1 at 6, ¶ 19; 15-2 at 9. According to Plaintiff, she, "submitted her resignation based, in part, on Mr. Bergman's and Mr. Boyd's promise that they would give [Plaintiff] an outstanding performance review . . . the first of which took place in [a] late January 2018 telephone call." ECF No. 1 at 6, ¶ 19. Following her resignation, the local paper published an article stating: "Asked why [Plaintiff] had resigned, [Mr.] Boyd said he did not know and [that Plaintiff] had given no reasons." ECF No. 1 at 7, ¶ 23. Plaintiff asserts this was "untrue" because she told Mr. Boyd in "January 2018 and

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 3

in subsequent meetings thereafter, that she was looking for work elsewhere and the reasons why." ECF No. 1 at 7, ¶ 24.

Plaintiff complains[1] that, subsequent to her resignation, Mr. Bergman and Mr. Boyd "broke their promise and refused to give [Plaintiff] an outstanding performance review. ECF No. 1 at 7, ¶ 25. Specifically, Plaintiff asserts Mr. Boyd "refused to field questions from [Plaintiff's] prospective employers" until she filed a notice of tort claim; only then Mr. Boyd responded to an inquiry from a prospective employer, stating: "I cannot and will not talk about Dr. Belew-Nyquist unless she gives me her express consent." ECF No. 1 at 7, ¶ 25, at 8, ¶ 29.

Plaintiff also complains that Mr. Bergman provided a negative review. Based on notes from the call, Mr. Bergman told the prospective employer:

> [Plaintiff] resigned her position[;] if she had not resigned we would have kept her on as Principal. Due to the way she left and resigned her position, we would not hire her again. She really did a great job and brought a lot of professionalism to the school. Before [Plaintiff] arrived the staff struggled to conduct a professional meeting and she gave the staff a lot of self-worth [and] brought a lot of pride and energy to the school.

---

[1] Plaintiff also complains that "someone from QSD told the Quincy Valley Post- Register [] words to the effect of "Dr. Belew-Nyquist suddenly resigned without any warning." ECF No. 1 at 6, ¶ 20. However, without the identity of the actor, there is no basis to find the statement was an intentional misrepresentation, was done out of retaliation, or was otherwise wrongful, and is therefore irrelevant.

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 4

ECF No. 1 at 9, ¶ 34. Plaintiff asserts Mr. Bergman's statement is "inconsistent with the glowing letter of reference [he] authored . . . on March 11, 2018[,]" in which he stated:

> Without reservation, I give Dr. Deborah Belew-Nyquist my highest recommendation as a prospective Director of Kilby Laboratory School. Given the opportunity, she will be a significant contributor and a highly effective educational leader.

ECF No. 1 at 10, ¶ 35. Notably, Plaintiff testified that, around June 21, 2018, she reminded Mr. Bergman of his promise to provide a reference and Mr. Bergman "very clearly told [her] that that had now changed because [she] . . . was leaving the district and that would no longer be the case anymore." ECF No. 15-2 at 7.

According to Plaintiff, this conduct "materially adversely affected her ability to find work" and that "[u]nquestionably, QSD's actions are in retaliation for her having opposed Mr. Ybarra's race discrimination." ECF No. 1 at 10, ¶¶ 37-38.

Plaintiff filed this suit on June 21, 2019 alleging Defendant violated Title VII of the Civil Rights Act and the Washington Law Against Discrimination. ECF No. 1 at 11-13. Defendant subsequently filed the pending motion for summary judgment, asserting Plaintiff's claims fail as a matter of law. The Motion is now before the Court.

//

//

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 5

# STANDARD OF REVIEW

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.*

In deciding, only admissible evidence may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). Mere allegations or denials in the pleadings are not enough. *Liberty Lobby*, 477 U.S. at 248. Further, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* at 255. However, the "mere existence of a scintilla of evidence" will not defeat summary judgment. *Id.* at 252. Per Rule 56(c), parties must support assertions by "citing to particular parts of the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

## DISCUSSION

Defendant seeks summary judgment against Plaintiff, contending Plaintiff "did not, as a matter of law, engage in activity protected by Title VII" because Plaintiff cannot establish that she held a *reasonable* belief she was opposing an unlawful employment practice. ECF No. 13 at 2. Defendant contends the WLAD must fail for the same reason, as the Title VII framework "applies equally to the ADA and WLAD." ECF No. 20 at 11 (quoting *Hotchkiss v. CSK Auto Inc.*, 918 F. Supp. 2d 1108, 1125 (E.D. Wash. 2013)). Plaintiff contends she did engage in protected conduct under Title VII and, as a result, the WLAD. ECF No. 16 at 8-10. Further, Plaintiff contends the WLAD provides broader protections against discrimination and retaliation, even if not otherwise protected under Title VII. ECF No. 16 at 6-8.

"In order to make out a prima facie case of discrimination based on opposition to an unlawful employment practice under § 704(a), [the plaintiff] must show that (1) he engaged in a statutorily protected activity (i.e., that he protested or otherwise opposed unlawful employment discrimination directed against employees protected by Title VII); (2) subsequently, he was disciplined or lost his job; and (3) a causal link exists between the protected activity and the adverse action." *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) (citing *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir. 1983)). "It is not necessary,

however, that the employment practice actually be unlawful; opposition clause protection will be accorded 'whenever the opposition is based on a "reasonable belief" that the employer has engaged in an unlawful employment practice.'" *Id.* (quoting *Crown Zellerbach Corp.*, 720 F.2d at 1013). "Opposition can, of course, consist of a refusal to carry out an order or policy." *Id.*

"Under the terms of § 704(a), requiring an employee to discriminate is itself an unlawful employment practice." *Id.* at 985. As such, protected activity includes "refusing to carry out or otherwise protesting" a policy requiring the employee "as a condition of his employment, to discriminate" based on race. *Id.* The Ninth Circuit opinion in *Moyo* illustrates the point:

> [I]f Moyo can show that he was discharged for refusing to carry out or otherwise protesting the defendants' alleged policy of denying showers to black inmates after work shifts, he has stated a retaliation claim based on an unlawful employment practice—i.e., the alleged practice of requiring Moyo, as a condition of his employment, to discriminate against black inmates.

*Id.*

Here, Defendant asserts Plaintiff did not have a *reasonable* belief she was opposing an unlawful employment practice.[2] Defendant argues the complained-of

---

[2] Defendant also argues "Mr. Ybarra's single request does not constitute an 'employment practice' of QSD". ECF No. 20 at 5. First, Mr. Boyd repeated the

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 8

discriminatory conduct was directed solely at the students and is thus not actionable under Title VII or the WLAD. *See* ECF No. 13 at 6-15 (citing numerous cases for the proposition that simply complaining about alleged discrimination directed against students does not constitute opposition to an unlawful employment practice). Plaintiff argues this case is not about Plaintiff "complaining to QSD management about race discrimination experienced by students" but rather "it is a case about [Plaintiff an employee] *refusing* a directive" from Mr. Ybarra (employer) to discriminate based on racial considerations. *See* ECF No. 16 at 14. The Court agrees with Plaintiff.

Contrary to Defendant's contentions, this case falls under the purview of *Moyo* because Plaintiff *refused to comply with a request* based in part on racial considerations. Plaintiff did not simply oppose discriminatory conduct aimed at students—she "refus[ed] to carry out" a request requiring her to take an action based on racial discrimination. *Moyo*, 40 F.3d at 985. As such, Defendant has also not established Plaintiff's belief was unreasonable, at least under the lens of summary judgment.

---

request. In any event, the Court declines to address this contention at this time because the issue was inadequately briefed.

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 9

Defendant has thus failed to establish it is entitled to summary judgment on either claim (Title VII and WLAD). Given the above disposition, the Court need not address the more particularized issue aimed at Plaintiff's WLAD claim.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Quincy School District No. 144's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's embedded Motion to Strike, ECF No. 20-1, is **DENIED** as moot.

The District Court Executive is directed to enter this Order and furnish copies to the parties.

**DATED** February 18, 2020.



THOMAS O. RICE
Chief United States District Judge