UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEBORAH BELEW-NYQUIST,<br><br>                              Plaintiff,<br><br>     v.<br><br>QUINCY SCHOOL DISTRICT<br>NO. 144,<br><br>                              Defendant. | NO. 2:19-CV-0215-TOR<br><br>ORDER ON PLAINTIFF'S MOTION<br>FOR DEFAULT JUDGMENT,<br>DEFENDANT'S MOTIONS FOR<br>SUMMARY JUDGMENT, AND<br>PARTIES' MOTIONS TO EXCLUDE |

BEFORE THE COURT are Plaintiff's Motion for Default Judgment Re Spoliation (ECF No. 23), Defendant's Motion for Summary Judgment Re: Plaintiff's Claim for Lost Wages (ECF No. 30), Defendant's Motion for Summary Judgment (ECF No. 33), Plaintiff's Daubert Motion to Exclude Expert Opinion of Dr. Janet Barry (ECF No. 35), and Defendant's Daubert Motion to Exclude Testimony of Dr. Scott Menard (ECF No. 38). These matters were submitted for consideration with oral argument on November 5, 2020. Matthew Z. Crotty appeared on behalf of Plaintiff. Michael E. McFarland, Jr. appeared on behalf of

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND PARTIES' MOTIONS TO EXCLUDE ~ 1

Defendant.  The Court has reviewed the record and files herein, and is fully

informed.  For the reasons discussed below, Plaintiff's Motion for Default

Judgment Re Spoliation (ECF No. 23) is **DENIED**, Defendant's Motion for

Summary Judgment Re: Plaintiff's Claim for Lost Wages (ECF No. 30) is

**DENIED as moot**, Defendant's Motion for Summary Judgment (ECF No. 33) is

**GRANTED**, Plaintiff's Daubert Motion to Exclude Expert Opinion of Dr. Janet

Barry (ECF No. 35) is **DENIED as moot**, and Defendant's Daubert Motion to

Exclude Testimony of Dr. Scott Menard (ECF No. 38) is **DENIED as moot**.

## BACKGROUND

This case concerns alleged retaliation by Defendant Quincy School District

("QSD") against Plaintiff Dr. Belew-Nyquist for opposing what she perceived as

an illegal request based on race to extend recognition for Associate of Arts degrees

at a high school graduation ceremony.  Defendant seeks summary judgment on

Plaintiff's retaliation claims and damages.  ECF Nos. 30, 33.  Plaintiff seeks

default judgment on the grounds that Defendant spoliated evidence.  ECF No. 23.

Additionally, the parties submitted motions to exclude expert testimony.  ECF No.

35, 38.  Except where noted, the following facts are not in dispute.

### A.  QSD Employment

On June 1, 2017, QSD hired Plaintiff Dr. Deborah Belew-Nyquist as QSD's

high school principal.  ECF No. 34 at 1, ¶ 1.  In January 2018, Plaintiff told QSD

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 2

Superintendent John Boyd that she was considering resigning.  ECF No. 75 at 27, ¶ 118.  On February 12, 2018, at Plaintiff's request, QSD Assistant Superintendent Nik Bergman provided Plaintiff with a draft letter of recommendation.  ECF No. 34 at 7, ¶ 13.

On March 30, 2018, QSD School Board Member Alex Ybarra asked Plaintiff if his daughter could be featured at the upcoming high school graduation ceremony with other Running Start (college credit) students "on account of her race."  ECF No. 75 at 10, ¶ 36.  Mr. Ybarra believed that his daughter, who is Hispanic, would be a good role model for the largely Hispanic population within the QSD.  ECF No. 34 at 2, ¶ 3.   In early April 2018, Mr. Ybarra visited Plaintiff's office where he made the same request, again referencing his daughter's race; Plaintiff denied the request and informed Mr. Boyd.  ECF No. 75 at 10, ¶ 36; ECF No. 90 at 64, ¶ 38.  Plaintiff perceived Mr. Ybarra as angry during this meeting.  ECF No. 75 at 10, ¶ 36.  Mr. Ybarra denied being angry.  ECF No. 75 at 11, ¶ 38.

Beginning in early April 2018, Plaintiff alleges Mr. Boyd repeatedly asked her to reconsider Mr. Ybarra's request which Plaintiff continued to oppose.  ECF No. 75 at 10-11, ¶¶ 36, 39.  Defendant denies that Mr. Boyd made repeated requests and claims that Mr. Boyd agreed with Plaintiff's decision.  ECF No. 90 at 34-35, ¶ 39.  Following Plaintiff's refusals, Mr. Ybarra met with Mr. Boyd.  ECF No. 37 at 11, ¶ 40; ECF No. 90 at 35, ¶ 40.  On April 13, 2018, Mr. Boyd texted

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND PARTIES' MOTIONS TO EXCLUDE ~ 3

Plaintiff requesting that she call him regarding Mr. Ybarra's request.  ECF No. 75 at 11, ¶ 41; ECF No. 90 at 35, ¶ 41.  On April 23, 2018, Mr. Ybarra emailed Plaintiff regarding his request.  ECF No. 75 at 11, ¶ 42; ECF No. 90 at 35, ¶ 42.

On April 25, 2018, Plaintiff alleges that Mr. Boyd asked Plaintiff "to give him something" to get Mr. Ybarra "off his back" regarding the graduation request.  ECF No. 75 at 12, ¶ 44; ECF No. 34 at 4, ¶ 7.  Mr. Boyd does not recall asking this, but Plaintiff remembers him "being angry and upset" during this conversation.  ECF No. 75 at 12, ¶ 44.  Mr. Boyd denies ever expressing anger towards Plaintiff regarding her decision.  ECF No. 96 at 2, ¶ 3.

Throughout the month of May, Mr. Boyd and Plaintiff repeatedly met regarding Mr. Ybarra's request, and Plaintiff believes he became angry at the third or fourth meeting.  ECF No. 75 at 12, ¶ 45.  Mr. Boyd and Mr. Ybarra also had several conversations regarding Mr. Ybarra's daughter being recognized at graduation.  ECF No. 75 at 14, ¶ 54.  Mr. Boyd recalls telling Mr. Ybarra that he needed to "problem solve" or "attempt to work out the issue" with Plaintiff.  ECF No. 75 at 14, ¶ 54; ECF No. 90 at 41, ¶ 54.  Defendant alleges that Mr. Boyd supported Plaintiff's decision and expressed such support to Mr. Ybarra, who in turn became frustrated with Mr. Boyd.  ECF No. 34 at 5, ¶ 10.

On May 8, 2018, Mr. Ybarra emailed Mr. Boyd a copy of his proposed motion to recognize Running Start students who would receive Associate of Arts

1    degrees at the QSD graduation ceremony.  ECF No. 90 at 38, ¶ 46.  Mr. Ybarra

2    also emailed QSD School Board Member Chris Baumgartner about the proposed

3    graduation policy change to which Mr. Baumgartner responded, "the only concern

4    I had after talking with you were the optics did not look good for change at the

5    high school board meeting."  ECF No. 75 at 12-13, ¶ 47.  Mr. Boyd then texted

6    Plaintiff regarding "a potential issue at the board meeting."  ECF No. 75 at 13,

7    ¶ 48.  That evening, Mr. Ybarra discussed the graduation issue at the board

8    meeting.  ECF No. 75 at 13, ¶ 49; ECF No. 90 at 39, ¶ 49.

9        On May 24, 2018, Mr. Ybarra raised the graduation issue at a second school

10   board meeting.  ECF No. 75 at 13, ¶ 51.  Plaintiff alleges that Mr. Boyd told her

11   not to attend this meeting because it would anger Mr. Ybarra.  ECF No. 75 at 13,

12   ¶ 51.  Mr. Boyd does not recall why Plaintiff was asked not to attend the meeting.

13   ECF No. 90 at 39, ¶ 51.  Prior to this meeting, Mr. Boyd texted Plaintiff asking

14   about the number of Running Start students who would be graduating and what

15   their racial makeup was.  ECF No. 75 at 13, ¶ 52.  Mr. Boyd texted this to inquire

16   into Mr. Ybarra's point "that we should recognize our Hispanic students."  ECF

17   No. 75 at 13, ¶ 52.

18       On May 29, 2018, the graduation issue was brought up at a third school

19   board meeting.  ECF No. 75 at 14, ¶ 53.  The school board did not approve Mr.

20   Ybarra's request and the Running Start students, including Mr. Ybarra's daughter,

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 5

1  were ultimately not recognized at the 2018 QSD high school graduation.  ECF No.

2  75 at 14, ¶ 55.

3      On June 1, 2018, at Plaintiff's request, Mr. Boyd emailed a draft letter of

4  recommendation to Plaintiff.  ECF No. 34 at 7, ¶ 14.  This email stated "[h]ere is

5  my draft.  I am open to making some changes to match the position you are

6  interested in and any grammatical changes."  ECF No. 34 at 7, ¶ 15.  This letter of

7  recommendation noted Plaintiff's resignation would be a "loss" to QSD, Plaintiff

8  was the top candidate for the QSD position, Plaintiff "persevered and succeeded in

9  changing the trajectory of the high school," the QSD climate of relationships

10 improved markedly under Plaintiff's leadership, Plaintiff is a "fierce advocate for

11 all students," and Mr. Boyd believed Plaintiff's "constant stream of positive

12 messaging to [students] individually and collectively has inspired many students to

13 want to be better and achieve at higher levels."  ECF No. 34 at 7-8, ¶ 16.  Plaintiff

14 alleges she expressed concern that the letter noted that Plaintiff overcame

15 obstacles.  ECF No. 75 at 25-26, ¶¶ 109-110.  Mr. Boyd did not make Plaintiff's

16 requested change to remove the language.  ECF No. 75 at 25-26, ¶ 110.

17     On June 3, 2018, Plaintiff emailed Mr. Bergman asking that she be allowed

18 to revise his letter of recommendation to direct the letter to specific prospective

19 employers.  ECF No. 34 at 8, ¶ 17.  The next day, Mr. Bergman responded via

20 email and agreed, telling Plaintiff "best of luck."  ECF No. 34 at 8, ¶ 18.

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 6

1    On June 7, 2018, Mr. Bergman shared a Facebook post created by the

2   Ombudsman Office Facebook page featuring Mr. Ybarra's daughter on QSD's

3   Facebook page.  ECF No. 75 at 15, ¶ 57, 16, ¶ 59; ECF No. 90 at 44, ¶ 59.  Upon

4   learning of the post, Plaintiff texted Mr. Boyd "I just saw the running start post on

5   Facebook.  Are you going to also feature other QHS students who will also be

6   receiving their [Associate of Arts degrees] after graduation?"  ECF No. 75 at 17,

7   ¶ 65.  Mr. Boyd responded, "Is that a question or a statement?"  ECF No. 75 at 17,

8   ¶ 65.  Later that day at an award banquet, Plaintiff told both Mr. Boyd and Mr.

9   Bergman that parents would perceive inequities that Mr. Ybarra's daughter was the

10  only one to be featured on the QSD Facebook page.  ECF No. 75 at 18, ¶ 66.  Mr.

11  Boyd allegedly told Plaintiff he did not want to talk about the issue anymore and

12  Plaintiff perceived Mr. Boyd and Mr. Bergman's body language and mannerisms

13  as uncomfortable.  ECF No. 75 at 18, ¶ 66.  Defendant denies that this interaction

14  occurred.  ECF No. 90 at 47, ¶ 66.

15    On June 11, 2018, Plaintiff submitted a letter of resignation to QSD.  ECF

16  No. 34 at 5, ¶ 11, 8, ¶ 19.  This resignation marked Plaintiff's third sequential

17  position where she left after only one year.  ECF No. 34 at 5, ¶ 11.  Mr. Ybarra

18  emailed education advocate Jordan Posamentier "by the way, the high school

19  principal resigned, about 2 hours ago.  Not because of [the graduation issue] but

20  I'm sure it helped make her decision."  ECF No. 75 at 19, ¶ 70.

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 7

1    At the QSD high school graduation, Plaintiff observed Mr. Ybarra "actively

2    shunning" her.  ECF No. 75 at 19, ¶ 71.  Plaintiff alleges Mr. Ybarra continued to

3    express frustration with Plaintiff to other QSD employees.  ECF No. 75 at 19, ¶ 72.

4    **B.  Post-QSD Employment**

5    On June 21, 2018, a professional search firm contacted Mr. Bergman

6    regarding a reference check for Plaintiff.  ECF No. 34 at 14, ¶ 39.  During the

7    phone call, Mr. Bergman commented: "[Plaintiff] resigned her position[,] if she

8    had not resigned we would have kept her on as Principal.  Due to the way she left

9    and resigned her position, we would not hire her again.  She did a great job and

10   brought a lot of professionalism to the school.  Before [Plaintiff] arrived the staff

11   struggled to conduct a professional meeting and she gave the staff a lot of self-

12   worth brought a lot of pride and energy to the school."  ECF No. 40-1 at 6.  That

13   same day, Plaintiff alleges Mr. Bergman told her he would no longer provide a

14   favorable reference.  ECF 75 at 29, ¶ 128.  Defendant denies Mr. Bergman said

15   this, and asserts that Plaintiff continued to use Mr. Bergman's letter of

16   recommendation.  ECF No. 90 at 76, ¶ 128.

17   On June 26, 2018, Mr. Boyd completed a reference check for Plaintiff

18   requested by the Bethel School District.  ECF No. 34 at 9, ¶ 21, ECF No. 75 at 49,

19   ¶ 21.  Mr. Boyd rated Plaintiff as an 8 on a scale of 1-10.  ECF No. 34 at 9, ¶ 23.

20   Mr. Boyd reported that Plaintiff "works cooperative and collaboratively with

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 8

1   staff." ECF No. 34 at 10, ¶ 24. He also reported that Plaintiff "took over a very

2   challenging culture and climate at [QSD High School] and was able to turn a toxic

3   situation into a much more harmonious culture." ECF No. 34 at 10, ¶ 25. When

4   asked if Plaintiff would be considered for a re-hire position at QSD, Mr. Boyd

5   answered "yes." ECF No. 34 at 10, ¶ 26. Plaintiff also used the letter of

6   recommendation from Mr. Bergman in support of the application to the position

7   within the District. ECF No. 34 at 9, ¶ 22.

8         On June 29, 2018, Mr. Boyd completed Plaintiff's performance evaluation.

9   ECF No. 34 at 9, ¶ 20. The evaluation was based on a scale of 1 to 4, with 1

10  representing "unsatisfactory" and 4 representing "distinguished." ECF No. 34 at 9,

11  ¶ 20. The evaluation consisted of eight categories, and Mr. Boyd rated Plaintiff as

12  an overall 3 representing that Plaintiff was "proficient." ECF No. 34 at 9, ¶ 20.

13  Plaintiff claims that Mr. Boyd said she would receive a 4 in the majority of the

14  eight categories, and believes she deserves a rating of 4 in all eight categories.

15  ECF No. 34 at 9, ¶ 20.

16        On July 2, 2018, Northshore School District contacted Mr. Boyd regarding a

17  reference for Plaintiff. Mr. Boyd rated Plaintiff as "distinguished" in 5 categories,

18  "highly proficient" in 6 categories, and "proficient" in 9 categories. ECF No. 34 at

19  10, ¶ 28. Mr. Boyd did not rate Plaintiff in either of the lower categories of

20

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 9

1  "developing" or "unsatisfactory."  ECF No. 34 at 10, ¶ 28.  Mr. Boyd's comments

2  stated:

3       [Plaintiff] has, over the course of the school year made tremendous
       progress in how adults in the building interact with each other.

4       Simply put, the climate of relationships among staff, students and
       administration has improved markedly under her leadership.  Staff

5       survey results point to a much happier staff more focused on student
       learning.  On [sic] aspect of [Plaintiff's] leadership worth mentioning

6       is how she encourages and supports teachers and staff to become
       leaders.  She mentored two new teachers to become the school's data

7       experts and presenters of information so that staff is more adept at
       understanding and using data to inform practice.  [Plaintiff] is a fierce

8       advocate for all students and constantly reinforces the idea that they
       are capable and full of potential.  She knows her students by name,

9       strength and need and always encourages students to reach beyond
       self-imposed limitations.  I believe, had [Plaintiff] stayed in the

10      position longer, she would have made significant progress with the
       school and would have grown in the areas in which I rated her on the

11      lower end of proficient.

12  ECF No. 34 at, 10-11, ¶ 29.  Overall, Mr. Boyd recommended Plaintiff for the

13  position with Northshore School District.  ECF No. 34 at 11, ¶ 30.

14       That same day, the Quincy Valley Post Register printed a story regarding

15  Plaintiff's resignation.  ECF No. 34 at 17, ¶ 48.  This first article included

16  comments on Plaintiff's resignation from Mr. Boyd, Mr. Baumgartner, and Mr.

17  Ybarra.  ECF No. 40-6 at 2-3.  Mr. Boyd said he was disappointed in Plaintiff's

18  resignation, Mr. Baumgartner said Plaintiff developed a reputation as "an assertive,

19  progressive, hard-working principal who tried to the best she could do," and Mr.

20  Ybarra said "[he] just didn't get the feeling that [Plaintiff] was excited . . . just

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 10

before the end of the school year."  ECF No. 40-6 at 2-3.

On July 6, 2018, the Quincy Valley Post Register printed a second story regarding Plaintiff's resignation.  ECF No. 34 at 17, ¶ 48.  This second article detailed Mr. Boyd's process on hiring a principal following Plaintiff's resignation. ECF No. 40-6 at 4-5.  On responding to the timing of Plaintiff's resignation that required a search for an interim principal, Mr. Boyd stated that he did not know why Plaintiff resigned and commented "[t]here is no 'normal' when it comes to resignations . . . .  The timing is tough, but it could have been later and that would have been worse.  She's resigned; I have accepted the resignation."  ECF No. 40-6 at 4.  After being asked whether Plaintiff's resignation was based on a conflict with QSD's "top brass," Mr. Boyd said "[y]ou're going to have to ask her" and added "I wish her all the best.  We are going to regroup and find another principal for the building."  ECF No. 40-6 at 5.

In August 2018, Plaintiff applied for a Coordinator, Visual Arts, World Language, Physical Education position with the Kent School District.  ECF No. 75 at 38, ¶ 173.  On September 28, 2018, Mr. Boyd completed a reference check requested by Kent School District.  ECF No. 34 at 11, ¶ 31.  Mr. Boyd rated Plaintiff as "excellent" in 3 categories, "very good" in 7 categories, and "good" in 4 categories.  ECF No. 34 at 11, ¶ 32.  Mr. Boyd also indicated he would rehire Plaintiff if given the opportunity.  ECF No. 34 at 12, ¶ 33.  Mr. Boyd commented,

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND PARTIES' MOTIONS TO EXCLUDE ~ 11

1  "[Plaintiff] had the skills and abilities to be an excellent principal in [QSD] – the

2  location was not the best fit given the small size of the district.  Employee is

3  eligible for re-hire, but would hope that the commitment would be for an extended

4  period of time."  ECF No. 34 at 12, ¶ 34.  Plaintiff alleges this reference contained

5  misrepresentations because her ratings could have been higher; as an example, Mr.

6  Boyd rated Plaintiff as "good" in Ethics but could point to no specific instances of

7  issues with Plaintiff's ethics.  ECF No. 75 at 54-55, ¶¶ 32-34.

8       On September 19, 2019, Mr. Boyd completed an email reference for

9  Plaintiff at the request of Clover Park School District.  ECF No. 34 at 12, ¶ 35.

10  Mr. Boyd rated Plaintiff "very good" in 6 categories and "good" in 1 category.

11  ECF No. 34 at 12, ¶ 35.  When asked if given the opportunity to re-employ

12  Plaintiff, Mr. Boyd commented: "We offered for her to remain in the position."

13  ECF No. 34 at 12, ¶ 35.

14       On or about March 28, 2019, Plaintiff applied for a position with Pacific

15  Beach Elementary School within the North Beach School District.  ECF No. 34 at

16  12, ¶ 36.  Plaintiff did not receive an in-person interview or job offer.  ECF No. 34

17  at 12, ¶ 36.  Between March 28, 2019 and April 8, 2019, Plaintiff spoke with North

18  Beach School District Superintendent Andrew Kelly over the phone.  ECF No. 34

19  at 12, ¶ 36.  On or about April 9, 2019, Plaintiff learned she did not get the

20  position.  ECF No. 75 at 37, ¶ 170.  Plaintiff then called Mr. Kelly and he told her

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 12

1    that he could not originally get ahold of Mr. Boyd for a reference check but later

2    had a conversation with him.  ECF No. 75 at 38, ¶¶ 171-172.  Mr. Kelly expressed

3    that his decision was not affected by any statement or conduct from any QSD

4    employee.  ECF No. 34 at 13, ¶ 36.  Plaintiff disputes this by speculating the

5    decision to not hire her only followed Mr. Kelly's conversation with Mr. Boyd.

6    ECF No. 75 at 38, ¶ 172.

7            On or about January 4, 2019, Plaintiff applied for a position within the

8    Richland School District.  ECF No. 34 at 13, ¶ 37.  Plaintiff interviewed for the

9    position and Plaintiff was ranked third among the four finalists for the position.

10   ECF No. 34 at 13, ¶ 37; ECF No. 75 at 34, ¶ 149.  During the hiring process,

11   Richland School District reached out to Plaintiff's listed references and former

12   employers, including Mr. Boyd.  ECF No. 34 at 13, ¶ 37.  Mr. Boyd did not

13   respond to the District's inquiry.  ECF No. 34 at 13, ¶ 37.  Plaintiff did not get the

14   position because the Richland School District hired an internal candidate.  ECF

15   No. 34 at 13, ¶ 37.  To follow up, Plaintiff called Tony Howard, an employee of

16   Richland School District, who allegedly told her that numerous attempts to contact

17   Mr. Boyd "caused them to have great concerns" and that "it was a red flag."  ECF

18   No. 75 at 34, ¶¶ 150-151.  Plaintiff sent a follow up email to Mr. Howard

19   expressing concern that no QSD employee returned a phone call reference, which

20   Mr. Howard did not dispute.  ECF No. 75 at 35, ¶¶ 154-155.  A representative of

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 13

1    Richland School District has since stated that the decision not to hire Plaintiff was

2    not based on Mr. Boyd's lack of response.  ECF No. 34 at 13-14, ¶ 37.

3         On or about July 2, 2019, Plaintiff applied for the Principal position at

4    Sequim Middle School within the Sequim School District.  ECF No. 34 at 14, ¶ 38.

5    Plaintiff was not selected for an interview because the district was concerned that

6    Plaintiff's past three jobs lasted for one year or less.  ECF No. 34 at 14, ¶ 38.

7    According to the Assistant Superintendent of Sequim School District, the decision

8    not to interview was based on Plaintiff's job history rather than any conversations

9    with Mr. Boyd.  ECF No. 34 at 13, ¶ 38.  However, Plaintiff disputes the District's

10   rationale because the Assistant Superintendent called Mr. Boyd "out of curiosity"

11   regarding Plaintiff's application.  ECF No. 75 at 32, ¶ 142.  During that

12   conversation, Mr. Boyd declined to comment on Plaintiff's job performance based

13   on the advice of QSD counsel.  ECF No. 90 at 84, ¶¶ 145, 147.

14        **C.  Expert Testimony and Discovery**

15        On or about June 29, 2020, Plaintiff identified Dr. Scott Menard as an expert

16   to provide a report, testimony, and opinion regarding Plaintiff's claims.  ECF No.

17   34 at 15, ¶ 41.  In his report, Dr. Menard states that "the administrators of [QSD]

18   adversely affected [Plaintiff's] ability to attain employment" by failing to return

19   reference check phones calls to North Beach and Richland School Districts.  ECF

20   No. 34 at 15, ¶ 42.  At both the July 15, 2020 and September 1, 2020 depositions,

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 14

1    Dr. Menard acknowledged that he had never spoken to anyone affiliated with

2    North Beach or Richland School District.  ECF No. 34 at 15-16, ¶¶ 43-44.  Dr.

3    Menard also acknowledged that he had "no way of knowing" which prospective

4    employers contacted QSD about Plaintiff.  ECF No. 34 at 16, ¶ 43.  Finally, Dr.

5    Menard testified that he was unable to state whether potential communications

6    between Defendant and prospective employers had any influence on the decision

7    and does not know why Plaintiff was not chosen for interviews and/or

8    employment.  ECF No. 34 at 17, ¶ 47.

9         With the exception of Kent School District, Plaintiff did not depose anyone

10   employed or affiliated with any school district to which she applied following her

11   resignation from QSD.  ECF No. 34 at 15, ¶ 40.

12                                  **DISCUSSION**

13   **A.  Defendant's Motions for Summary Judgment**

14        Defendant seeks summary judgment on Plaintiff's retaliation claims and

15   damages.  ECF Nos. 30, 33.  As described below, Defendant's Motion for

16   Summary Judgment on Plaintiff's retaliation claims is dispositive.  Therefore,

17   Defendant's Motion for Summary Judgment Re: Plaintiff's Claim for Lost Wages

18   is denied as moot.

19        *1.  Summary Judgment Standard*

20        The Court may grant summary judgment in favor of a moving party who

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 15

demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Moreover, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (internal citation omitted).

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 16

"against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

### 2.  Plaintiff's Retaliation Claims

Defendant seeks summary judgment on Plaintiff's federal and state retaliation claims on the grounds that Plaintiff cannot establish a *prima facie* case of retaliation.  ECF No. 33.  Plaintiff opposes Defendant's Motion, arguing that there are material issues of fact that preclude summary judgment.  ECF No. 74.

Title VII prohibits an employer from retaliating against employees or former employees that oppose a practice prohibited by Title VII.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).  Courts follow the *McDonnell Douglas* burden-shifting framework where a plaintiff must first establish a *prima facie* case of retaliation. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).  If the plaintiff meets this burden, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action.  *Id.* at 1062.  If the defendant meets this burden, the plaintiff must show that the defendant's proffered reason is "pretextual."  *Id.*

To establish a prima facie case of retaliation, a plaintiff must show "(1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND PARTIES' MOTIONS TO EXCLUDE ~ 17

1   employment action, and (3) there was a causal link between the plaintiff's

2   protected activity and the adverse employment action." *Poland v. Chertoff*, 494

3   F.3d 1174, 1179-80 (9th Cir. 2007).

4       a.  Protected Activity

5       The Court addressed Plaintiff's protected activity in its Order denying

6   Defendant's prior Motion for Summary Judgment. *See* ECF No. 22. Thus, the

7   protected activity – opposing what Plaintiff believed to be race-based favoritism at

8   a graduation ceremony – is not at issue in the current Motion.

9       b.  Adverse Employment Action

10      Defendant identified several of Plaintiff's claimed adverse employment

11  actions, as discussed below. ECF No. 33. Plaintiff claims that there are other

12  instances of retaliation but all of Plaintiff's allegations rest on the same categories

13  that Defendant identified. ECF No. 75 at 48.

14      An employment action is adverse if it is reasonably likely to deter

15  employees from engaging in protected activity. *Ray v. Henderson*, 217 F.3d 1234,

16  1243 (9th Cir. 2000). This is an objective standard that "often depends on a

17  constellation of surrounding circumstances, expectations, and relationships which

18  are not fully captured by a simple recitation of the words used or the physical acts

19  performed." *White*, 548 U.S. at 69.

20

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 18

1    The Ninth Circuit has broadly defined adverse employment actions to

2  include negative job references and undeserved negative performance reviews.  *See*

3  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *Lyons v. England*,

4  307 F.3d 1092, 1118 (9th Cir. 2002).  However, adverse actions do not include

5  "trivial harms" such as snubbing or offensive comments outside the job reference

6  context.  *Burlington*, 548 U.S. at 68-69 (finding "trivial harms" and "'snubbing' by

7  supervisors and co-workers" do not constitute adverse employment actions);

8  *Brooks*, 229 F.3d at 929 (stating that badmouthing an employee outside the job

9  reference does not constitute an adverse employment action).

10                i.   Statements to the Press

11    There are two newspaper articles at issue regarding Plaintiff's resignation.

12  *See* ECF No. 40-6.  The first article, published on July 2, 2018, included comments

13  on Plaintiff's resignation from Mr. Boyd, Mr. Baumgartner, and Mr. Ybarra.  ECF

14  No. 40-6 at 2-3.  Mr. Boyd said he was disappointed in Plaintiff's resignation, Mr.

15  Baumgartner said Plaintiff developed a reputation as "an assertive, progressive,

16  hard-working principal who tried to the best she could do," and Mr. Ybarra said

17  "[he] just didn't get the feeling that [Plaintiff] was excited . . . just before the end

18  of the school year."  ECF No. 40-6 at 2-3.

19    The second article, published on July 6, 2018, detailed Mr. Boyd's process

20  on hiring a principal following Plaintiff's resignation.  ECF No. 40-6 at 4-5.  On

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 19

1    responding to the timing of Plaintiff's resignation that required a hunt for an

2    interim principal, Mr. Boyd stated that he did not know why Plaintiff resigned and

3    commented "[t]here is no 'normal' when it comes to resignations . . . .  The timing

4    is tough, but it could have been later and that would have been worse.  She's

5    resigned; I have accepted the resignation."  ECF No. 40-6 at 4.  After asked

6    whether Plaintiff's resignation was based on a conflict with QSD's "top brass,"

7    Mr. Boyd said "[y]ou're going to have to ask her" but added "I wish her all the

8    best.  We are going to regroup and find another principal for the building."  ECF

9    No. 40-6 at 5.

10         Here, most of the comments regarding Plaintiff are neutral or positive.  To

11    the extent that any comments were negative, such comments constituted snubbing

12    or badmouthing outside of the job reference context, amounting to mere trivial

13    harm.  Therefore, the Court finds that these statements to the press do not

14    constitute an adverse employment action.

15              ii.    Statements to Professional Search Firm

16         When a professional search firm, not a prospective employer, contacted Mr.

17    Bergman, he commented: "[Plaintiff] resigned her position if she had not

18    resigned[,] we would have kept her on as Principal.  Due to the way she left and

19    resigned her position, we would not hire her again.  She did a great job and brought

20    a lot of professionalism to the school.  Before [Plaintiff] arrived[,] the staff

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 20

struggled to conduct a professional meeting and she gave the staff a lot of self-worth [and] brought a lot of pride and energy to the school."  ECF No. 40-1 at 6.  Following this reference, the search firm noted that Mr. Boyd's "tone of voice [was] professional and polite."  ECF No. 40-1 at 6.

Here, Plaintiff isolates one statement from Mr. Boyd – that he would not hire her again – out of context from the rest of the reference.  Mr. Boyd's other statements were certainly favorable towards Plaintiff.  Taking Mr. Boyd's comments in context, collectively, and in the light most favorable to Plaintiff, there is no material question of fact that this was a positive job reference.

In any event, the professional search firm was not a prospective employer.

### iii.    Failure to Return Phone Calls

The parties do not cite to any authority governing whether failure to return phone calls in the job reference context constitutes an adverse employment action.  Plaintiff has submitted expert testimony which claims failure to return phone calls adversely affects a job applicant's opportunity to be hired.  ECF No. 34 at 15, ¶ 42.  But here, Plaintiff offers no statement from a prospective employer that this occurred and was the reason she did not get hired.  At this stage, drawing all reasonable inferences in light most favorable to Plaintiff, there is no material question of fact, other than pure speculation, that this constituted an adverse employment action.

1    iv.    Performance Evaluation

2        Here, Plaintiff alleges that Mr. Boyd promised her "an outstanding

3  performance evaluation" but Mr. Boyd disputes that this promise was made.  ECF

4  No. 90 at 67, ¶ 108.  While Plaintiff takes issue with comments she perceives as

5  negative, she does not assert that anything in the evaluation is undeserved or that

6  the evaluation was sub-average.  ECF No. 36-1 at 36-37.  Therefore, Plaintiff's

7  above-average evaluation does not "rise to the level of an adverse employment

8  action by the employer."  *Lyons*, 307 F.3d at 1118; *see Kortan v. California Youth*

9  *Auth.*, 217 F.3d 1104, 1112-13 (9th Cir. 2000) (finding no adverse action stated

10 because "evaluation was not sub-average or undeserved").

11   v.    Statements to Prospective Employers

12       Here, there are two forms of communications to prospective employers at

13 issue: online reference checks and oral communications.  ECF No. 33 at 9.  As to

14 the online reference checks, Mr. Boyd and Mr. Bergman provided positive

15 references and Plaintiff has pointed to no evidence that any statements were

16 undeserved.  ECF No. 33 at 9; ECF No. 74.  As to the oral communications,

17 Plaintiff relies on pure speculation that negative references occurred.  ECF No. 33

18 at 9; ECF No. 74.  Therefore, statements to prospective employers, if any, were not

19 adverse employment actions.  Even if Plaintiff could demonstrate an adverse

20 employment action, Plaintiff fails to demonstrate the necessary causation.

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 22

c.  Causation

Defendant argues that Plaintiff cannot establish causation where she relies solely upon speculative assertions.  ECF No. 33 at 9.  Plaintiff argues that multiple issues of material fact exist as to whether there is causation based on allegations of employer dishonesty, unequal treatment, unworthy explanations, discriminatory patterns, evasive testimony, and proximity in time of protected activity and adverse action.  *See* ECF No. 74 at 9-15.

To demonstrate causation under Title VII, the plaintiff must "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  *University of Texas Southwestern Medical Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  To show a but-for cause, the plaintiff must show that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Id.* at 360.  Causation "can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action."  *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011).

Here, proximity in time does not help Plaintiff; she received (and continued to receive) letters of recommendation and positive reference checks *after* the protected activity.  Notably, on June 1, 2018, Mr. Boyd emailed a draft letter of recommendation to Plaintiff.  ECF No. 34 at 7, ¶ 14.  Moreover, on June 3, 2018,

1    Plaintiff emailed Mr. Bergman to request that she revise his letter of

2    recommendation to direct the letter to specific prospective employers.  ECF No. 34

3    at 8, ¶ 17.  The next day, Mr. Bergman responded via email and agreed, telling

4    Plaintiff "best of luck."  ECF No. 34 at 8, ¶ 18.  Only after her resignation did QSD

5    employees express frustration over Plaintiff's choice to stay for only one year.

6    ECF No. 40-1 at 6.  Even then, QSD employees continued to serve as positive

7    references.  *See supra* at 8-14.

8        In an attempt to rebut this sequence of events, Plaintiff relies on

9    circumstantial evidence that is largely speculation and based on inadmissible

10   evidence.  *See* ECF No. 74 at 9-15.  As to claims of employer dishonesty,[1] Plaintiff

11   seems to take issue that Mr. Boyd and Mr. Bergman gave positive references while

12   also stating they would not personally rehire her due to her short stay at QSD;

13   those two assertions are not contradictory and are not evidence of dishonesty.  ECF

14   No. 74 at 9.  As to claims of unequal treatment that Mr. Boyd "promptly" returned

15   _____

16   [1]    Plaintiff also alleges "employer dishonesty" for Mr. Boyd and Mr.

17   Bergman's occasional failure to recall specific conversations by citing to dicta in a

18   Ninth Circuit dissenting opinion.  ECF No. 74 at 10.  The Court finds that the

19   specific failure to recall conversations did not go to any material fact where there is

20   no evidence of negative communications to prospective employers.

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 24

reference calls for another QSD employee, Mr. Boyd also returned calls for

Plaintiff, and there is no evidence that the other QSD employee was in a similar

situation to Plaintiff, i.e. resigned after one year.  ECF No. 74 at 10.  As to

Plaintiff's remaining claims, Plaintiff relies on speculation and irrelevant evidence.

*See* ECF No. 74 at 11-15; ECF No. 89.  Therefore, Plaintiff has failed to

demonstrate a *prima facie* case of retaliation.

Even if Plaintiff established a *prima facie* case, Defendant satisfied its'

burden for putting forth a legitimate, nondiscriminatory reason for the challenged

action.  In this case, Defendant provided evidence that any of Defendant's

employee's unwillingness to personally rehire Plaintiff at QSD was the result of

Plaintiff's resignation after one year.  ECF No. 33 at 6.  Plaintiff cannot utilize her

own speculation to establish pretext.  Therefore, Plaintiff has not demonstrated that

there are triable issues of fact as to her federal retaliation claim.

Because Plaintiff cannot establish a prima facie case of retaliation, the Court

need not address Defendant's argument that Plaintiff cannot establish damages.

ECF No. 33 at 13.

d.  <u>State Retaliation Claim</u>

Defendant seeks summary judgment on Plaintiff's state law retaliation claim

on the same grounds as her federal retaliation claim.  ECF No. 33 at 20.  Plaintiff

argues that the state law retaliation claim should survive because it is "construed

1    more broadly and more liberally" than the federal retaliation claim.  ECF No. 74 at

2    21.

3        Mirroring Title VII, the Washington Law Against Discrimination

4    ("WLAD") prohibits an employer from retaliating against a person who engages in

5    protected activities.  RCW 49.62.010.  Due to the similar framework, "Washington

6    courts often look to federal case law on Title VII when interpreting the WLAD."

7    *Blackburn v. State*, 186 Wash. 2d 250, 258 (2016).  However, where Title VII

8    requires a plaintiff to show that the protected activity was "but-for" cause of the

9    adverse employment action, the WLAD requires a plaintiff to show that the

10   protected activity was a "substantial factor" causing the adverse employment

11   action.  *Jin Zhu v. N. Cent. Educ. Serv. Dist.-ESD 171*, 189 Wash. 2d 607, 612

12   (2017) (quoting *Allison v. Hous. Auth. of City of Seattle*, 118 Wash. 2d 79, 95

13   (1991)).

14       For the same reasons Plaintiff's federal retaliation claim fails, so too does

15   the state retaliation claim.  Even under the less stringent causation standard,

16   Plaintiff fails to demonstrate that her protected activity was a substantial factor of

17   the adverse employment action.  As discussed above, Plaintiff relies on her own

18   speculative assertions to establish causation.  This cannot survive the

19   overwhelming weight of Defendant's positive employment references following

20

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 26

1    her protected activity.  Therefore, Plaintiff has also failed to establish a *prima facie*

2    case of state law retaliation.

3    **B.  Plaintiff's Motion for Default Judgment**

4    Plaintiff moves for default judgment and seeks attorneys' fees and costs on

5    the grounds that Defendant "failed to preserve relevant electronic evidence once on

6    notice of potential litigation and failed to issue a litigation hold letter."  ECF No.

7    23 at 10, 21.  Defendant argues that there is no spoliation of evidence where

8    Plaintiff's motion is based on "speculative assertions that certain events must have

9    occurred."  ECF No. 42 at 20.  Defendant also argues that even if spoliation

10    occurred, default judgment is a drastic sanction that is not warranted under the

11    circumstances.  *Id.*

12    Under Rule 37(e), the moving party must show: (1) the nonmoving party

13    should have preserved the electronically stored information ("ESI") in anticipation

14    or conduct of litigation, (2) the nonmoving party lost the ESI because it failed to

15    take reasonable steps to preserve it, and (3) additional discovery cannot restore or

16    replace the ESI.  Fed. R. Civ. P. 37(e).[2]  If the moving party satisfies all three

17

18

19    [2]    Plaintiff also urges the Court to use its inherent power to sanction as an

20    alternative to Rule 37.  ECF No. 70 at 5-6.  However, Rule 37(e) "forecloses

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 27

elements, two kinds of sanctions are available. *Id.* First, if the spoliation prejudiced the other party, the Court may order measures no greater than necessary to cure the prejudice. *Id.* Second, if the nonmoving party acted with intent to deprive the moving party of the ESI, the Court may (1) presume that the lost information was unfavorable to the party, (2) instruct the jury that it may or must presume the information was unfavorable to the party, or (3) dismiss the action or enter default judgment. *Id.* The remedy of default judgment under Rule 37 "is very severe." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

### 1.  Duty to Preserve

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Absolute preservation is not required, rather "[a] party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant." *Akiona v United States*, 938 F.2d 158, 161 (9th Cir. 1991).

---

reliance on inherent authority" to address ESI spoliation. 2015 Advisory Committee Notes. In any event, there is no sanctionable conduct.

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND PARTIES' MOTIONS TO EXCLUDE ~ 28

1    Plaintiff alleges that Defendant had a duty to preserve QSD employee

2    emails, text messages, and phone logs.  ECF No. 23.  As to the emails, Defendant

3    certifies that QSD has not destroyed any emails that were sent and saved through

4    the QSD server.  ECF No. 42 at 10.  As to the text messages, the Court already

5    determined that Defendant had no legal right over the text messages that Plaintiff

6    sought because they were personal text messages on personal devices not used for

7    work-related purposes.  ECF No. 85 at 6.  Moreover, the Court finds that personal

8    text messages were not potentially relevant to Plaintiff's claim of negative job

9    references "[i]n light of the fact that reference checks are not done via text."  ECF

10    No. 42 at 11.  As to the phone logs, these do not record what was said in a case

11    where Plaintiff speculates that Mr. Boyd and Mr. Bergman were "telling"

12    prospective employers "false and misleading" things.  ECF No. 42 at 13.  Even if

13    the ESI and phone logs were relevant to Plaintiff's claims, Plaintiff also fails to

14    make a showing under the final two prongs.

15    *2.  Lost ESI*

16    The moving party has the burden of showing that ESI existed and was

17    subsequently destroyed or not preserved.  *Gomez v. Stop & Shop Supermarket Co.*,

18    670 F.3d 395, 399 (1st Cir. 2012).  ESI is not "lost" if it is available from an

19    alternative source.  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D.

20    543, 552 (N.D. Cal. 2018) (collecting cases).  However, mere speculation that

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 29

deleted documents may exist is insufficient.  *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013).

Here, Plaintiff speculates that Defendant "retaliated against her by either not returning reference checks from prospective employers or giving poor reference checks to prospective employers."  ECF No. 23 at 3.  Out of the school districts that provided responsive documents, not a single district provided evidence of any text message, email, or phone call that demonstrated "false and misleading" information about Plaintiff.  ECF No. 42 at 4.  This is consistent with Defendant's claim that such evidence never existed and with prospective employers' claims that any decision not to hire Plaintiff was not the result of any communication with QSD employees.  *Id.*  Thus, Plaintiff is merely relying on her own speculation that such documents once existed.  *See* ECF No. 70.  Because Plaintiff cannot demonstrate that ESI existed, Plaintiff cannot demonstrate that ESI was lost.

### 3.  Restoration or Replacement

Finally, Plaintiff must show that additional discovery cannot restore or replace the ESI.  Fed. R. Civ. P. 37(e).  Plaintiff is seeking communications allegedly made to prospective employers; the most obvious replacement of such information is through direct testimony of the prospective employers.  Tellingly, Plaintiff did not depose any prospective employer, with the exception of one employee from the Kent School District (ECF No. 76-16), who may have spoken

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND PARTIES' MOTIONS TO EXCLUDE ~ 30

with a QSD employee in the job reference context (ECF No. 77 at ¶ 19).  ECF No. 34 at 15, ¶ 40.  To the contrary, Defendant produced declarations from prospective employers demonstrating that any decision not to hire Plaintiff was not influenced by communications from QSD employees.  ECF Nos. 37-4, 37-5, 91, 93-94.  Thus, if such information was available by way of deposition or declaration; Plaintiff merely chose not to seek it.

The Court finds that Plaintiff has failed to demonstrate spoliation of ESI evidence.  Even if a degree of spoliation were found, the severe remedy of default judgment is not warranted where there is no competent evidence that Defendant acted with the intent to deprive Plaintiff of such evidence.  Therefore, Plaintiff's Motion for Default Judgment is denied.

### C.  Parties' Motions to Exclude

As Plaintiff has failed to establish a *prima facie* case for retaliation and summary judgment is granted in Defendant's favor, the parties' Motions to Exclude are denied as moot.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Default Judgment Re Spoliation (ECF No. 23) is **DENIED** and the Court declines to award fees or costs to either party.

2.  Defendant's Motion for Summary Judgment Re: Plaintiff's Claim for Lost Wages (ECF No. 30) is **DENIED as moot**.

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND PARTIES' MOTIONS TO EXCLUDE ~ 31

3. Defendant's Motion for Summary Judgment (ECF No. 33) is

   **GRANTED**.  All claims against Defendant are dismissed with prejudice.

4. Plaintiff's Daubert Motion to Exclude Expert Opinion of Dr. Janet Barry

   (ECF No. 35) is **DENIED as moot**.

5. Defendant's Daubert Motion to Exclude Testimony of Dr. Scott Menard

   (ECF No. 38) is **DENIED as moot**.

6. All remaining hearings, deadlines and trial are **VACATED**.

The District Court Executive is directed to enter this Order, enter judgment

for Defendant, furnish copies to counsel, and **CLOSE** the file.

**DATED** November 20, 2020.



THOMAS O. RICE
United States District Judge

ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, AND
PARTIES' MOTIONS TO EXCLUDE ~ 32